UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AUDRAY RHINEHART,                      )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )      No.  4:06CV1405 SNL
                                       )                    (TIA)
MICHAEL ASTRUE, Commissioner           )
of Social Security,                    )
                                       )
                    Defendant.         )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration.  All

pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(b) for appropriate disposition.

## I.    Procedural History

On February 12, 2004, Claimant Audray Rhinehart filed an application for Disability

Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr.

125-27)[1] and for Supplemental Security Income payments pursuant to Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381, et seq. on November 9, 2005.  (Tr. 76).  In the Disability

Report Adult completed by Claimant and filed in conjunction with the applications, Claimant

stated that her disability began on May 17, 1996, due to hepatitis C, back strain, hernia, and right

---

[1]"Tr." refers to the page of the administrative record filed by the defendant with its Answer
(Docket No. 9/filed December 28, 2006).

wrist problems. (Tr. 249-55).[2] On initial consideration, the Social Security Administration denied

Claimant's claims for benefits. (Tr. 101-06). Claimant requested a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 100). On March 7, 2006, a hearing was held before an

ALJ. (Tr. 21-53). Claimant testified and was represented by counsel. (Id.). A vocational expert

also testified at the hearing. (Tr.44-52). Thereafter, on June 19, 2006, the ALJ issued a decision

denying Claimant's claims for benefits. (Tr. 9-20). After considering the contentions raised in the

letter of Claimant's counsel, the Appeals Council found no basis for changing the ALJ's decision

and denied Claimant's request for review of the ALJ's decision on August 25, 2006. (Tr. 3-6).

The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. §

405(g).

## II. Evidence Before the ALJ

### A. Hearing on March 7, 2006

#### 1. Claimant's Testimony

At the hearing on March 7, 2006, Claimant testified in response to questions posed by the

ALJ and counsel. (Tr. 24-44). Claimant testified that her date of birth is December 21, 1956.

---

[2]Claimant filed a prior an application for Title II disability insurance benefits for the same benefits on April 18, 2002, which was denied at the initial level. (Tr. 12). Because the Commissioner issued a final decision denying disability on January 30, 2004, the ALJ determined a finding of disability prior to January 30, 2004, is precluded under the doctrine of *res judicata* based on his finding no evidence warranting reopening the prior determination. (Tr. 12). This final decision of the Commissioner is res judicata as to subsequent applications involving the same facts and issues existing at the time of the first decision and is not reviewable by this court. Califano v. Sanders, 430 U.S. 99, 107-109 (1977). Accordingly, the ALJ properly determined that because neither fraud nor similar fault were involved in the earlier decision, the earlier decision should not be reopened. Thus, a finding of disability at any time prior to January 30, 2004, is precluded under the doctrine of res judicata. The undersigned further notes that Claimant does not allege error in so limiting the period covered by her current applications and acquiesced to the res judicata application to the date of January 30, 2004, at the hearing on March 7, 2006. (Tr. 24).

(Tr. 24). At the time of the hearing, Claimant was forty-nine years of age. (Tr. 25). Claimant testified that she completed four years of college and received a degree as a veterinarian assistant at Midwest Institute and in word processing at a college in Flat River. (Tr. 25, 35-36). Claimant has never worked in the capacity of a veterinary assistant. (Tr. 25). Claimant lives in a rented house in Union, Missouri with her fifteen year old son. (Tr. 26). Claimant has been separated from her husband since September, 2005, and stopped driving in 1997, after her license was suspended following a DWI. (Tr. 26). Claimant's daughter drives her if she needs to go somewhere. (Tr. 27). Claimant stands at five-feet three inches and weighs 160 pounds. (Tr. 27). Claimant testified that she receives $234.00 in TANEF each month and food stamps. (Tr. 43).

Claimant testified that employers will not hire her, because she will be too tired to function properly because of her illness. (Tr. 29-30). Claimant last applied for a cooking job at the White Rose Cafeteria one month earlier. (Tr. 30). Claimant last worked in February, 2002, when she worked for a temporary service for Reliable Workforce. (Tr. 27). Claimant testified that she worked on electronic boards at TTI for a month and as a packer of baseballs at Rawlings for two days. (Tr. 27-28). Before working for the temporary service, Claimant worked as a welder with Washington Metal for two years until she was laid off in May, 2001. (Tr. 28). As a welder, Claimant welded blueprints and other small items like a brush holder or a band and tacked on bands for transmitters. Claimant testified that she would sit at one point and then stand and kneel while performing the job and she lifted between fifteen to twenty pounds. (Tr. 28). Prior to working at Washington Metal, Claimant testified that she had been off work for several years because she had not been functioning very well. (Tr. 29). Claimant worked for almost ten years at the State Mental Health Department taking care of clients who were either MR, had a

development disability, had terminal illnesses, or had HIV.  Claimant left the job because she became ill.  (Tr. 29).

Claimant testified that her lack of mobility is the physical problem causing her difficulty relating to work.  (Tr. 30).   Because of placing injections in her legs for the last ten years, Claimant experiences pain and fatigue.  (Tr. 31).  Claimant experiences the most significant pain in the lower part of her back all of the time, rating the pain as an eight on a scale of one to ten. Standing causes the pain in her back to increase.  (Tr. 31).  Lying down and getting off her legs helps alleviate her back pain.  (Tr. 32).  Claimant has been taking Hydrocodone as pain medication as prescribed by Dr. Leipharts.  Claimant testified that she does not take the medication on a regular basis because she has problems functioning and sleeping when taking the medication.  (Tr. 32).  Because of her liver functioning, she cannot take any other pain medications.  (Tr. 34).  Since 1999, Claimant also experiences pain continuously in her right side, rating the pain as a seven.  (Tr. 34-35).  Bumps on the road increase the pain.  (Tr. 34). Claimant's holds her breath and hopes for the best when she experiences the pain in her right side. (Tr. 34).

Dr. Bacon treats Claimant's chronic active hepatitis C and has tried different treatment therapies.  (Tr. 37).  Claimant testified that Dr. Bacon treated her most recently with Infergin, but she still experiences symptoms.  (Tr. 37).  Her most significant symptoms include throwing up and having diarrhea a couple of times a day.  Claimant also experiences fatigue and sometimes she is lucky if she can function for three to four hours in a day.  (Tr. 38).  Claimant has tried different diets.  (Tr. 37).  Claimant also watches her sugar levels because she is a type two diabetic.  (Tr. 37).  Claimant testified that she has good and bad days.  (Tr. 38).  On a good day, Claimant gets

up, finds her way to the bathroom, and washes the dishes. In comparison, on a bad day, Claimant crawls if she is lucky and stays in bed. Claimant testified that she sometimes has bad days four to five times a week or a whole month. (Tr. 38). Claimant testified that her liver causes her to have bad days. (Tr. 39).

Claimant sees Michael Cundiff, a therapist, for memory problems and depression. (Tr. 39). Claimant testified that she cries all the time because of her illness and, she takes mediation never introduced in humans. Claimant testified that it is very depressing to be told by a physician there is no cure for her illness. (Tr. 39). Claimant testified that she has problems maintaining and living on a daily basis. (Tr. 40). Claimant testified that her condition is worse because of the pain in her back and her right side. (Tr.40).

Claimant testified that she attends AA meetings three times a week at a church two blocks from her home. (Tr. 40). Claimant has an alcohol problem but has never used cocaine and marijuana. (Tr. 41). Claimant last used alcohol in 2003 and does not smoke. (Tr. 41).

Claimant testified that she can carry five pounds, but if she tried to carry more weight, she would probably fall because of the extreme pressures on her back and side. (Tr. 42). Claimant has been limited to carrying five pounds since 2004 after getting stuck in a bathtub. An MRI revealed deterioration of a lower disc. Claimant testified that she no longer goes shopping. (Tr. 42). Since 2004, Claimant has been limited to walking no more than five minutes. (Tr. 43). Claimant can stand for a couple of minutes before she has to lean on something to relieve the pressure. (Tr. 43). Claimant can sit for an hour. (Tr. 43).

## 2. Testimony of Vocational Expert

Vocational Expert Michael Brethauer, a vocational rehabilitation

counselor/consultant, listened to the testimony during the hearing and reviewed the vocational evidence in the file. (Tr. 44-46, 87-90). Mr. Brethauer determined that Claimant has the following past relevant work: a psychiatric aide, a semi-skilled occupation with medium physical demand pursuant to the DOT code and medium to heavy as performed and described by Claimant; a welder-fitter, a skilled occupation with medium physical demand pursuant to the DOT code and medium as performed and described by Claimant; and an electronic assembler, a semi-skilled occupation with light physical demand pursuant to the DOT code and medium as performed and described by Claimant. (Tr. 46). Mr. Brethauer opined that some of the listed occupations would have provided transferable skills to a different exertional level. (Tr. 46-47). In particular, Mr. Brethauer opined that the electronics assembler job and the welder fitter jobs would translate to sedentary types of small parts assembly jobs. (Tr. 47). Specifically, Mr. Brethauer testified that the transferrable skills would include following blueprints, guides, manuals, and work orders in production, drawings or samples, positioning and aligning parts in relationship to one another, and laying out and assembling. (Tr. 47).

The ALJ asked Mr. Brethauer to assume the following:

[A] hypothetical worker able to lift and carry 20 pounds occasionally, 10 pounds frequently, who could stand and/or walk for up to at total of six hours in an eight hour day assuming the normal breaks, sit for up to six hours in an eight hour day in total assuming the normal breaks, would those abilities and limitations allow the performance of any of the past work that you've indicated?

(Tr. 47). Mr. Brethauer opined that the hypothetical worker could perform the occupation of electronics assembler with a light physical demand including lifting of up to twenty pounds on an occasional basis and up to ten pounds on a frequent or more often basis. Next, the ALJ asked Mr. Brethauer to assume the worker could lift ten pounds on an occasional basis with the other

factors from the first hypothetical and how that would affect his opinion. (Tr. 47). In response, Mr. Brethauer opined that such change in the lifting would eliminate any of the occupations in Claimant's past work history as normally performed or as performed and described by Claimant. (Tr. 48). Next, the ALJ asked if an individual with the residual functional capacity as described in the second hypothetical with the same vocational capabilities as Claimant taking into consideration age, education, and work background have the ability to adjust to and perform any other types of work. Mr. Brethauer opined that in terms of direct transferability, such an individual would be able to perform sedentary assembly types of jobs, and there would be 2,000 jobs in the relevant labor market, the State of Missouri, and about 100,000 in the national economy. (Tr. 48).

> The ALJ asked Mr. Brethauer to assume the following for the third hypothetical:
>
> [A] worker able to lift and carry up to 5 pounds on an occasional basis, sit up to a total of six hours in an eight hour day assuming they normally allow breaks, stand and walk for up to two hours in an eight hour day assuming the normal breaks, no climbing items such as ladders or scaffolds with occasional use of ramps or stairs, occasional or no more than occasional stooping, kneeling or crawling, and who should avoid even moderate exposure to irritants such as fumes, dust, gases, and smoke. Again taking into consideration an individual with the same vocational capabilities as the Claimant as I described would there be any jobs that would be possible in the local or national economy?

(Tr. 48-49). Mr. Brethauer opined that there would be jobs available, but not any jobs that transfer directly out of Claimant's work history. (Tr. 49). In particular, Mr. Brethauer explained that there would be a few sedentary unskilled type of jobs such as an information clerk type and gate guard type jobs with a 1,000 available in the relevant labor market and 50,000 in the national economy. Mr. Brethauer eliminated the assembly type jobs except for the jobs performed in very clean environments because of the problems of protecting workers from either moderate exposure

to fumes, gases, and smoke. Mr. Brethauer testified that the testimony he provided during the hearing was consistent with the provisions of the Dictionary of Occupational Titles in the selective characteristics of occupations. (Tr. 49).

Claimant's counsel asked Mr. Brethauer whether a worker experiencing symptoms of fatigue, pain, and other symptoms interfering with her ability to maintain necessary attention and concentration needed to perform even simple work tasks on a frequent basis during the work day could perform any occupations. (Tr. 50). Mr. Brethauer responded that an individual suffering symptoms to the point indicated by counsel would be unable to perform even simple work tasks on a frequent basis, and he is unaware of any jobs such individual could perform in the open labor market. (Tr. 51). Mr. Brethauer explained that even the most basic unskilled jobs require on a frequent basis, one third to two thirds of the day, the performance of at least simple work tasks. Next, counsel asked whether a person had the ability to perform any gainful work activity if during an average eight hour workday the person had to take an unscheduled work break four times a day up to an hour in duration. Mr. Brethauer indicated that if such occurred on a regular basis, this would interfere with the person's ability to work because an employer expects an employee to be on the work site performing some duties and if such person is absent from the work site for up to an hour four times a day on an unscheduled basis, no employer would be willing to pay such person. (Tr. 51). Next, counsel asked whether an employer in the national economy would tolerate a worker who is absent from work because of symptoms or a need for treatment for more than four days each month. (Tr. 51-52). Mr. Brethauer explained that if such worker were able to get beyond the normal probationary period, usually 60 to 90 days of employment, an employer might tolerate such worker. (Tr. 52). By comparison, Mr. Brethauer

indicated that such worker would be let go during the first 60 to 90 days.  (Tr. 52).

### 3.  Forms Completed by Claimant

In Claimant's Medication form completed by the Hearing Office, Claimant listed Zoloft, Medisense, Protoix, Biaxin, Ribriatrion, Infergen, and Prednisone as her current medications.  (Tr. 128).

In the Work Background form, Claimant indicated working as a factory worker for Reliable WorkForce between January and February 2002, as a welder at Washington Metal Fabrications from May, 1999, through May, 2001, and a respite care provider for the Missouri State Mental Health Department from 1987 through 1997.  (Tr. 129).

In the Disability Report -Field Office completed on February 12, 2004, the interviewer noted that during the face-to-face interview, Claimant almost fell asleep a couple of times and was emotionally inappropriate at times by laughing for no reason and then showing no or little emotion.  (Tr. 245-48).  The interviewer noted that Claimant does not allege any mental illness. (Tr. 247).

In the Adult Disability Report dated February 12, 2004, Claimant reported having to crawl at times.  (Tr. 249).  Claimant reported becoming unable to work because of her conditions on May 17, 1996, and last working on February 15, 2002.  (Tr. 250).  Claimant listed her longest job as a welder at Washington Metal Fabricators from 1988-2002.  (Tr. 250).  Claimant listed Dr. Bruce Bacon and Dr. Jerry Fitzgerald as her treating physicians.  (Tr. 251-52).

In answering questions about her conditions on March 3, 2004, Claimant indicated that she cannot work because she sometimes has to crawl to certain areas.  (Tr. 222).  As her current activities, Claimant reported reading a lot.  (Tr. 224).

In the Work History Report dated March 15, 2004, Claimant indicated that she worked as a health care provider from 1989-1996, as a welder from 1999-2001, and as a temporary worker for Reliable Workforce in 2002. (Tr. 227).

## III.   Medical Records

In an office visit on April 8, 2003, Claimant complained of diarrhea and stomach pain to Kate Lichtenberg, a D.O., at Meramec Medical Group. (Tr. 366-67). Claimant reported not currently receiving any kind of treatment for her hepatitis C. Dr. Lichtenberg found Claimant to have gastroenteritis. (Tr. 366-67).

In an office visit on August 20, 2003, Claimant reported right arm pain and legs hurting. (Tr. 364A). In a follow-up visit on September 3, 2003, Claimant reported being treated in the emergency room on August 29, 2003, and being given Vicodin and Valium. (Tr. 364A).

During an office visit on September 8, 2003, Claimant reported recently being treated in the emergency room with some difficulty with her lower back after a fall and difficulty with various joint pains and lower back pain. (Tr. 317). Dr. Bacon, a professor of internal medicine at St. Louis University, apprised Dr. Jerry Fitzgerald, a D.O., that Claimant seems to be stable in regards to her liver disease with no new medications with which to treat her but possibly some clinical studies that she may be eligible to participate. Dr. Bacon indicated he would follow up with laboratory studies in six months. (Tr. 317-20).

The radiology report dated September 25, 2003, of Claimant's lumbar spine showed degenerative disc disease from L3-L4 through L5-S1. (Tr. 376, 381).

On a prescription note dated January 26, 2004, Dr. Fitzgerald opined that "Mrs. Rhinehart

is presently unable to work due to Hepatitis C."[3]

On February 2, 2004, Dr. Bacon apprised Dr. Fitzgerald of Claimant's progress after a follow-up visit. (Tr. 294). Dr. Bacon noted how Claimant is having some problems with fatigue in general but she has been doing about the same. Dr. Bacon noted that he is considering her participation in a study using medication that induces endogenous production of interferon. (Tr. 294-95, 297). Dr. Bacon prescribed Protonix. (Tr. 296).

In the Explanation of Benefits dated March 26, 2004, Lisa Masek, a senior counselor for Disability Determinations, opined as follows:

> This 47 year old claimant with 14 years of education and at least 2 years of SGA level work in food services, health care and factory work alleges disability due to Hep C, back pain, hernia and right wrist pain. She does have mild DDD and has been treated for Hep C for several years with fatigue being her most prominent complaint.
>
> The claimant can not return to their[*sic*] past work either as they[*sic*] describe it or as it generally performed because she should not work in food services or patient care with active Hep C and should avoid heavy factory work due to fatigue. The claimant's vocational profile is consistent with the ability to adjust to other light work (Voc Rule 202.21). The number of jobs in this range would not be significantly reduced by the claimant's nonexertional restrictions. Jobs, for example, the claimant could do, but not limited to, include: furniture rental consultant (retail trade) 295.357-018; usher (amusement & recreation) 344.677-014; and counter clerk (photo finishing) 249.366.010.

(Tr. 79).

In the Physical Residual Functional Capacity Assessment completed on March 26, 2004, Ms. Masek listed Hep C as Claimant's primary diagnosis and back strain as her secondary diagnosis. (Tr. 134-41). Ms. Masek indicated that Claimant can occasionally lift twenty pounds,

---

[3]"A medical source opinion that an applicant is 'disabled' or 'unable to work' ... involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005), *citing* Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

frequently lift ten pounds, and stand and sit about six hours in an eight-hour workday. (Tr. 135).

Ms. Masek noted that Claimant filed an earlier application for disability due to Hepatitis C, back

strain, hernia, and right wrist problem, and the earlier claim had been denied by the ALJ on

January 30, 2004. In the instant application, Claimant now alleges back pain stemming a

diagnosis of back strain after a fall. Ms. Masek noted that Claimant has documented mild

degenerative changes in a MRI of her back done in September, 2003. After the ALJ's decision in

January, 2004, Dr. Bruce Bacon, her treating hepatologist, noted how Claimant is experiencing

some fatigue, but in general, Claimant was doing about the same and her physical examination

was unremarkable. Because Claimant has been non-responsive to Peg & RV treatments, Claimant

would be participating in a new drug study. The medical records indicate that Claimant's liver

condition has been stable since all visits from September, 2003. (Tr. 135). Ms. Masek further

noted that Claimant is limited due to the fatigue from her Hep C and her fatigue could be

exacerbated by heavier lifting and carrying and due to mild DDD. (Tr. 136). Ms. Masek notes

that Claimant has no established postural, manipulative, visual, communicative, or environmental

limitations. (Tr. 136-38). In support, Ms. Masek noted how Claimant alleges that she is so

fatigued she must crawl at times to get around the house, and she has problems with numbness in

her back and wrists and falls asleep frequently. (Tr. 139). Further, Claimant alleges she does

little housework or shopping and rarely drives or rides in a vehicle due to the discomfort it causes

her. Ms. Masek opined that Claimant's complaints, except for fatigue, are inconsistent with her

reports to her physicians and not fully consistent with her MDI complaints and are considered

only partially credible. (Tr. 139). Ms. Masek noted how Dr. Fitzgerald indicated that Claimant

should not work in patient care due to her Hepatitis C, but he provided no limitations or

explanation for his opinion. Ms. Masek opined that such decision is reserved for the Commissioner and the reports of Dr. Bacon are given controlling weight as he is a hepatologist. (Tr. 140).

In a treatment note dated May 17, 2004, Claimant reported back pain and arthritis as her medical conditions to Dr. Fitzgerald. (Tr. 363). Dr. Fitzgerald diagnosed Claimant with bronchitis. (Tr. 363). In a follow-up visit on May 26, 2004, Dr. Fitzgerald treated Claimant for bronchitis. (Tr. 363).

On May 27, 2004, Claimant agreed to participate in a study of Hepatitis C. (Tr. 175-76).

On July 13, 2004, Claimant agreed to participate in a clinical research trial for viral hepatitis at St. Louis University. (Tr. 169).

In a letter dated October 20, 2004, Dr. Bacon apprised Dr. Lee Parks of Claimant's progress after a follow-up visit. (Tr. 286). Dr. Bacon noted how Claimant recently participated in a study evaluating medication that is designed to increase endogenous interferon production, but Claimant did not have the desired result. Claimant reported feeling fine but recently having some episodes of nausea, vomiting, and diarrhea. The laboratory studies revealed normal liver chemistries with amylase and lipase normal. Claimant wanted to have the symptoms worked up and so Dr. Bacon ordered an upper endoscopy and colonoscopy by Dr. Hayashi as well as a right upper quadrant ultrasound. (Tr. 286).

Dr. Hayashi performed an endoscopy on November 11, 2004, at St. Louis University Hospital. (Tr. 287). The test results showed exophagatis in lower esophagus, normal stomach, and normal duodenum. (Tr. 289). Dr. Hayashi recommended increasing Claimant's Protonix prescription and to follow-up with Dr. Bacon. (Tr. 289).

In a letter dated November 24, 2004, Dr. Bacon apprised Dr. Parks of Claimant's status after a follow-up visit on November 22, 2004. (Tr. 285). A right upper quadrant ultrasound showed no focal liver lesions, some sludge in her gallbladder, and right kidney slightly decreased in size. Laboratory results from October showed completely normal liver chemistries. Dr. Bacon determined that since Claimant's symptoms were better, he would continue her medication regime and follow-up in the three months. Dr. Bacon indicated that he would continue to keep Claimant in mind for studies for treatment of Hepatitis C. (Tr. 285).

On December 13, 2004, Dr. Katarzyna Krawczyk prescribed Claimant Zoloft with two refills. (Tr. 353-54).

On January 20, 2005, Dr. John Weltmer, an assistant clinical professor in the Department of Orthopedic surgery at St. Louis University, performed a bunionectomy and prescribed a post operative shoe. (Tr. 341, 347). Dr. Weltmer prescribed follow-up rehabilitation two to three times a week for three weeks on March 18, 2005. (Tr. 341).

On January 25, 2005, Claimant returned for a follow-up visit with Michael Cundiff, a licensed professional counselor, and reported continuing treatment as a participant in a Hepatitis C study at St. Louis University. (Tr. 276). Claimant reported that "things are a bit better for herself." (Tr. 276). Claimant reported being prescribed medication for her diabetes by Dr. Parks two weeks earlier. (Tr. 276). In the next visit on February 8, 2005, Mr. Cundiff noted that Claimant appeared happy and content. (Tr. 275). On her new medication, Metaformin, Claimant reported that her blood sugars had not decreased. Claimant discovered she had Hepatitis C because of testing for diabetes. Claimant reported not taking any medications for Hepatitis C and uncertain when phase II study for Hepatitis C at St. Louis University would begin. Claimant

reported fatigue and headaches. (Tr. 275).

On March 1, 2005, Claimant reported that she attends AA meetings each week and is concerned about ingesting experimental drugs. (Tr.274). During the next visit on March 22, 2005, Mr. Cundiff noted that Claimant was upbeat and energized. (Tr. 273). Claimant reported taking Zoloft and the medication helping her depression. (Tr. 273). Claimant reported doing okay but worn out because of her medication in a follow-up visit on April 18, 2005. (Tr. 272). Claimant started taking Infergen seven days a week. Claimant reported that she will receive $234 as Temporary Assistance as an exempt person trying to obtain social security benefits. (Tr. 272).

In the treatment note dated May 3, 2005, Claimant reported to Mr. Cundiff that the experimental treatment for Hepatitis C causes her headaches. (Tr. 271). Claimant reported being tired and not feeling up to things. Mr. Cundiff noted that Claimant seemed depressed and weary. (Tr. 271). On June 3, 2005, Mr. Cundiff noted that Claimant seemed to be in good spirits despite having to seek treatment for bronchitis and ulcers in her throat at the hospital. (Tr. 270). Claimant reported that she continues to enjoy fishing at her dad's pond near Richwoods at the river. Claimant's weekly schedule is as follows: on Mondays, she often goes to the doctor; on Tuesdays, she goes to see Tom Hallam, a counselor who treats her for addiction; on Wednesdays, she goes to AA meetings, and once a month to Hepatitis C meetings; and on Thursdays, she takes care of business and fishes. Claimant reported that she enjoys reading meditation books. (Tr. 270).

In a follow-up visit on July 7, 2005, Claimant reported not being able to fish much because of the heat. (Tr. 268). Claimant reported not wanting to continue her medications because the medications cause her to feel run down. Mr. Cundiff requested that Claimant continue on the

monthly schedule. (Tr. 268). In the next visit on August 4, 2005, Mr. Cundiff noted how

Claimant was in good spirits even though she had received a letter from the Missouri Department

of Corrections apprising her that she had tested positive for THC (Tetrahydrocannabinol), or pot,

but Claimant denied using the drug and attributed the false positive test result to the experimental

Hepatitis C medications. (Tr. 267). Mr. Cundiff noted that Dr. Bacon is out indefinitely and so

Claimant would go to see Dr. Bruce Luxon in his absence. Further, he noted that Claimant's

depression is under control, and Claimant continues to take Zoloft as prescribed by Dr.

Krawczyk. (Tr. 267). On August 25, 2005, Claimant reported being under a lot of stress because

of car issues creating problems for her to get to doctor appointments. (Tr. 266). In the follow-up

visit on September 8, 2005, Mr. Cundiff noted that Claimant was upbeat. (Tr. 265). Claimant

complained of the number medical studies she has attended and noted that she has had seven

injections of Infergen and takes thirty-five capsules of Ribovirin each week. (Tr. 265).

On September 27, 2005, Mr. Cundiff noted that Claimant was upbeat even though her

husband is no longer living with her based on an ex parte order she received against him. (Tr.

264). Claimant reported that Dr. Bacon apprised her that the experimental medication was not

working but Claimant admitted not being compliant in taking the medication. (Tr. 264).

On October 11, 2005, in a follow-up visit, Dr. Bacon apprised Claimant that her HCV-

RNA from September 19, 2005 was positive meaning that Claimant had developed a

breakthrough. (Tr. 282). Because this means a relapse while on treatment, Dr. Bacon determined

to discontinue Claimant's Infergen and Ribavirin since the treatments were no longer working.

Dr. Bacon directed Claimant to return for follow-up treatment in six months. (Tr. 283).

On October 18, 2005, Mr. Cundiff noted that Claimant seemed to be doing well but that

she is tired.  (Tr. 263).  After attending a meeting with her son on Sunday, Claimant played

softball.  Claimant reported being apprised by Dr. Bacon that there is nothing that can be done for

her, and she should throw away her medication.  (Tr. 263).

In a letter dated October 19, 2005 directed to whom it may concern, Dr. Bacon opined as

follows:

> The purpose of this letter is to certify that I have been involved in the care
> of Ms. Audray Rhinehart.  I first saw her back in July 1994.  She has chronic
> hepatitis C and despite the multiple therapies that we have tried on her, she still
> had chronic hepatitis C.  The treatments have been unsuccessful.

(Tr. 283).

On November 3, 2005, Claimant showed Mr. Cundiff a letter from Dr. Bacon stating that

Claimant has chronic Hepatitis C and she has not responded to multiple treatments.  (Tr. 262).

Mr. Cundiff noted that Claimant seemed to be feeling well.  (Tr. 262).

On December 8, 2005, Claimant reported doing okay.  (Tr. 261).  In preparation to

moving into her cousin's house, Claimant washed down the whole house and paid to have many

repairs done only to find out she cannot move in the house or recoup the cost of the repairs.

Claimant does not return for treatment by Dr. Bacon until March.  Mr. Cundiff noted that meager

income is not adequate for her needs, but Claimant feels she cannot work because of her disease

and pain.   Mr. Cundiff suggested that Claimant find some kind of employment.  (Tr. 261).

In a follow-up visit with Mr. Cundiff on January 5, 2006, Claimant reported doing well

and taking her husband back because he is helpful when she goes fishing and mushroom hunting.

(Tr. 260).  Claimant recently started using a cane to ambulate.  Claimant returns to Dr. Bacon in

April to discuss the possible resumption of Hepatitis C treatments.  Claimant noted depression but

admits Zoloft works as treatment. Claimant reported tingling feeling in both legs and pain in her back. (Tr. 260).

In the January 26, 2006, Hepatitis C Residual Functional Capacity Questionnaire, Dr. Bacon indicated treating Claimant from July 28, 1994, through October 11, 2005, with intermittent office visits. (Tr. 277). Dr. Bacon noted that Claimant has symptomatic Hepatitis C with her prognosis being excellent as evidenced by the liver biopsy. Dr. Bacon identified Claimant's symptoms as chronic fatigue, weaknesses, sleep disturbance, and right upper quadrant pain. (Tr. 277). Dr. Bacon noted three courses of Infergen and Ribavirin treatment with no response. (Tr. 278). As functional limitations, Dr. Bacon indicated that Claimant can sit more than two hours, can stand for two hours before needing to sit down, and can sit and stand/walk for about four hours in an eight-hour workday. (Tr. 279). Dr. Bacon opined that Claimant is not capable of working an eight-hour workday forty hours per week but that she could work fifteen to twenty hours each week.[4] On an average eight-hour workday, Claimant would need to take four unscheduled, one-hour breaks to rest because of her fatigue. (Tr. 279). Dr. Bacon further opined that Claimant can rarely lift ten pounds and never lift more than twenty pounds. (Tr. 280). Claimant can rarely twist or stoop and never crouch or climb ladders or stairs. Dr. Bacon opined that Claimant's impairments are likely to produce good days and bad days with Claimant having to miss more than four days of work a month as a result of her impairments. (Tr. 280). Dr. Bacon listed no other limitations affecting Claimant's ability to work. (Tr. 281).

On February 2, 2006, Claimant reported feeling well despite kicking out her husband again

---

[4]A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

after letting him return last month. (Tr. 259). Claimant reported to Mr. Cundiff continued problems with pain in her legs. (Tr. 259).

## IV.    The ALJ's Decision

The ALJ found that Claimant met the disability insured status requirements on May 17, 1996, the date Claimant alleges she became unable to work, and continued to meet them through June 30, 2005. (Tr. 19). Claimant has not engaged in substantial gainful activity since 2002. The ALJ found that the medical evidence establishes that Claimant has hepatitis C and back strain, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that Claimant's allegations of disabling symptoms precluding all substantial gainful activity are not consistent with the evidence and are not credible for the reasons specified in the body of the decision. The ALJ found that Claimant has had the residual functional capacity to perform work except for work that involves lifting over five pounds and standing and walking more than two hours in an eight-hour workday and sitting for six hours in an eight-hour workday. Claimant should perform no climbing, only occasionally use ramps or stairs , stoop, kneel, or crawl, and only have moderate exposure to irritants such as fumes, dust, gases, or smoke. The ALJ determined that Claimant is unable to perform her past relevant work as a health care or factory worker. Claimant has the residual functional capacity to perform a wide range of sedentary work. The ALJ noted that Claimant is a younger individual and has completed two years of college education. Considering Claimant's residual functional capacity and vocational factors, the ALJ determined that the issue of whether Claimant has transferable skills is not critical. (Tr. 19).

Based on the credible testimony of the vocational expert in combination with Claimant's

residual functional capacity, her age, education, and work experience, the ALJ opined that Claimant is not disabled. (Tr. 19). The ALJ noted that the vocational expert identified a significant number of jobs that a hypothetical individual with Claimant's vocational factors and residual functional capacity could perform. (Tr. 19-20). The ALJ found Claimant is not under a disability. (Tr. 20).

## V.     Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); <u>see</u> <u>also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to

support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The claimant's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The claimant's subjective complaints relating to
exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the
claimant's impairments.

6.  The testimony of vocational experts when required which
is based upon a proper hypothetical question which sets forth the claimant's    impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

In her applications for disability benefits, Claimant alleged disability due to hepatitis C, back strain, and wrist problems. The ALJ found Claimant's back strain and hepatitis C to be severe impairments and concluded that the impairments, alone or in combination, are not of listing level. A review of claimant's application shows that Claimant failed to allege depression as a basis for disability. Although Claimant testified at the hearing that her depression affects her ability to function because she cries all the time, the ALJ fulfilled his duty of investigating this claim not presented in the applications for benefits but for the first time, raised by Claimant during the hearing.

The ALJ properly determined that Claimant does not have a severe mental disorder.

Indeed, the ALJ opined in his decision as follows:

> On December 8, 2005, the claimant was seen for counseling by Michael Cundiff, licensed professional counselor. Mr. Cundiff indicated that the claimant said she could not do factory work, but might be able to do office work. The counselor suggested that the claimant try to find some kind of employment. His impression was that the claimant had moderate global symptoms of depression. Prior notes beginning in January 2005 show that the claimant reported having been in prison from 1997 to 1999 and recently (August 2005) being put on probation, related to an arrest in October 2003. In June 2005, the claimant reported that she enjoyed fishing on Thursdays at her Dad's pond and at a nearby river. In January 2006, the claimant described her physical health as "fair", citing some leg numbness. The claimant reported that anti-depressant medication worked for her symptoms, if she used it. In October 2005, the claimant said that she was tired. She told the counselor that she had a lot to do. In February 2006, the claimant reported that she attended Alcoholics Anonymous twice per week. The counselor's impression again was that the claimant had moderate symptoms (this assessment, represented by an assigned Global Assessment of Functioning score of 55, was repeated in all but one of the counseling sessions, the lone exception being at a point in time that the claimant reported having severe marital problems). The notes are not supportive of the presence of a severe or disabling mental health impairment, especially on a twelve-month durational basis with compliance with the directives of the claimant's treating physician. It is noted that even the assessment of moderate symptoms is inconsistent with the lack of objective findings or report of severe psychological symptoms by the claimant. The claimant's noncompliance in taking medication detracts from credibility, as discussed more fully hereinafter. The claimant's description of her physical health as fair (without mention of fatigue), her report that she believed she could work in at least one type of job, and the counselor's encouraging the claimant to work are factors inconsistent with an inability of the claimant to perform even sedentary work due to hepatitis C, back strain, and/or depression.

(Tr. 15)(internal citations omitted).

The Court finds no support anywhere in the record for Claimant's contention that the ALJ erred in failing to consider her depression as a severe impairment, and to determine its effect on her limitations. First, Claimant never alleged that her depression was disabling, and she presented no medical evidence substantiating such claim. Indeed, during the March 5, 2005, office visit to

- 23 -

Mr. Cundiff, Claimant reported taking Zoloft and the medication helping her depression. Likewise, in a follow-up visits on August 4, 2005, Mr. Cundiff noted that Claimant's depression to be under control while taking Zoloft and in the office visit on January 5, 2006, Claimant reported experiencing depression but admitted Zoloft works as treatment. Moreover, Claimant never alleged any limitation in function as a result of her depression in her applications for benefits or during the hearing.[5] Indeed, the medical record is devoid of any support. The record not only fails to contain substantial evidence to support such a claim, it contains virtually no evidence to support Claimant's argument. The ALJ is under "no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996) (quoting Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993)). Accordingly, this claim is without merit.

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly consider the treating physician's report and thus failed to properly consider residual functional capacity. Claimant also contends that the ALJ failed to properly assess Claimant's credibility regarding her subjective complaints. Finally, Claimant contends that the hypothetical question to the vocational expert did not capture the concrete consequences of her residual functional capacity.

A.        Weight Given to Dr. Bacon's Opinions

Claimant contends that the ALJ erred by not giving appropriate weight to Dr. Bacon's

---

[5]The undersigned notes that there are no medical records in the transcript of any treatment notes reflecting, including Mr. Cundiff's notes, that Claimant ever reported having problems with crying spells during any visits. (Tr. 259-76). Nonetheless, Claimant testified at the hearing how she had problems with crying spells. See Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting claimant's inconsistent statements as a factor to consider in determining claimant's credibility).

opinions and restrictions when determining her residual functional capacity.  See 20 C.F.R. §
404.1527(d)(2) (2005) (requiring the Commissioner to give controlling weight to the opinion of a
treating physician if "it is well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other substantial evidence"); Shontos v.
Barnhart, 328 F.3d 418, 426 (8th Cir. 2003).  When a treating source's opinion is not controlling,
it is weighed by the same factors as any other medical opinion: the examining relationship, the
treatment relationship, supporting explanations, consistency, specialization, and other factors.
See 20 C.F.R. § 404.527(d).  Claimant contends that the ALJ should have accorded more weight
to Dr. Bacon's opinions and restrictions inasmuch as Dr. Bacon was her treating physician and a
specialist.

    In the instant cause from July 28, 1994, through October 11, 2005, with  intermittent
office visits, Dr. Bacon treated Claimant's hepatitis C.  A review of his treatment notes reveal that
Dr. Bacon never found Claimant to have any functional limitations with respect to sitting,
standing, walking, lifting, twisting, stooping, crouching, or climbing until completing the Hepatitis
C Residual Functional Capacity Questionnaire ("RFC Questionnaire") on behalf of Claimant on
January 26, 2006.  Further, Dr. Bacon determined that Claimant's fatigue is severe enough to
interfere with attention and concentration needed to perform even simple work tasks frequently
and that Claimant is capable of working fifteen to twenty hours a week with four unscheduled
breaks lasting for one hour.  Likewise, Dr. Bacon determined that Claimant would likely be absent
from work on average four days per month.  A review of his treatment notes show how Dr.
Bacon had never made any findings regarding Claimant's fatigue impacting her attention or
concentration or the need for Claimant to miss at least four days of work each month until he

completed the RFC Questionnaire. In his decision, the ALJ discussed Dr. Bacon's restrictions set forth in the RFC Questionnaire and incorporated in part Dr. Bacon's restrictions in his RFC determination. In accordance with the restrictions imposed by Dr. Bacon, the ALJ found that Claimant could occasionally lift five pounds, could sit for more than two hours in a workday, could stand or walk more than two hours in an eight-hour workday, and perform no climbing.

Dr. Bacon's opinions were based primarily on Claimant's subjective complaints and were not supported by clinical and diagnostic techniques or objective medical evidence. Such findings were inconsistent with other evidence in the record. Cf. Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)(treating physician's vague and conclusory opinion is not entitled to deference); see Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (ALJ's decision to discount or even disregard the opinion of a treating physician will be upheld "where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermined the credibility of such opinions")(citations and internal quotation marks omitted). Indeed, Dr. Bacon's own treatment records do not contain clinical evidence of a disabling condition during the relevant time period or any restrictions imposed by Dr. Bacon based on Claimant's fatigue. As noted by the ALJ, the objective medical evidence included in Dr. Bacon's own treatment notes showing Claimant's liver condition to be stable, examination showing unremarkable results, no ascites, some problems with fatigue, normal liver chemistries, her prognosis to be excellent, and liver-related testing showing Claimant's condition of Hepatitis C to be mild. Likewise, Dr. Bacon's conservative treatment of Claimant and the lack of functional limitations previously imposed by him undermine the

credibility of the opinions set forth in the RFC Questionnaire.  Indeed, Dr. Bacon never opined in his treatment notes that Claimant is unable to work more than twenty hours a week, and would be absent from work more than four days per month.  Dr. Bacon also found Claimant to have normal psychological functioning , normal liver function, and her condition to be mild with an excellent prognosis.  A review of the record shows no substantive evidence to support Dr. Bacon's specific restrictions.  Thus, the ALJ's determination not to exclusively rely on Dr. Bacon's restrictions as to Claimant's functional limitations was not improper. The substantial evidence on the whole record supports the ALJ's conclusion that Dr. Bacon's specific restrictions were not entitled to controlling weight.

In rejecting Dr. Bacon's medical opinion finding Claimant unemployable in the open labor market, the ALJ noted how Dr. Bacon had determined her prognosis to be excellent, her liver condition to be stable, and examination showed unremarkable results.  Likewise, before making such a finding of disability, he never placed any functional restrictions on Claimant or found her not able to work.  See, e.g., Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (a treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given to his opinions) see also Goetz v. Barnhart, No. 05-2267, slip op. at 2 (8th Cir. June 2, 2006) (unpub. per curiam) (declining to give controlling weight to the treating physician's opinion because the treating physician's notes were inconsistent with her residual functioning capacity assessment).

In the instant case, the ALJ determined to give Dr. Bacon's opinions and restrictions neither controlling weight nor much deference.  The ALJ gave good reasons for such determinations, and such reasons are supported by substantial evidence on the record as a whole.

Moreover, the opinions contained in the RFC Questionnaire, finding Claimant has extremely severe functional limitations and unable to work four days each month are inconsistent with and not supported by Dr. Bacon's own treatment notes. Dr. Bacon never imposed any limitations on Claimant during his course of treatment and never found any of Claimant's limitations precluded her from being gainfully employed. The opinions set forth in the RFC Questionnaire are conclusory, not based upon any clinical or laboratory diagnostic techniques, and are not supported by the evidence contained in the record as a whole. See Metz v. Shalala, 49 F.3d 374, 377 (8th Cir. 1995) (physician's conclusory statement without supporting evidence does not amount to substantial evidence of disability); Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) (physician's opinion must be supported by medically acceptable clinical or diagnostic data). Thus, the ALJ did not err in according Dr. Bacon's opinions and restrictions little weight. Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

With regard to the ALJ's determination of Claimant's RFC, the undersigned finds that the ALJ properly assessed the opinion of Dr. Bacon, Claimant's treating physician. Claimant relies on Dr. Bacon's statement in the RFC Questionnaire that Claimant would miss more than four days of work each month and could only work up to twenty hours each work. First, although a treating physician's opinion regarding a claimant's ability to work, combined with other medical information may aid the ALJ in making a disability determination, "the ultimate determination of disability . . . is a question for the SSA, not a physician." Samons v. Astrue, 497 F.3d 813, 819, (8th Cir. 2007) (citations omitted). The undersigned acknowledges that "[a] treating physician's opinion 'regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques

- 28 -

and is not inconsistent with the other substantial evidence in the record.'" Id. at 818-19 (quoting Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)). However, "the ALJ may give a treating doctor's opinion limited weight if it provides conclusory statements only . . . or is inconsistent with the record. Id. (citations omitted).

"The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004). It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003); McKinney v. Apfel, 228 F.3d 860 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individuals's strengths and weaknesses." SSR 85-16. SSR 85-16 further delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to others *over a period of time*" and that the "frequency, appropriateness, and independence of the activities must also be considered." SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218. In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a

claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints. The ALJ must consider all of the evidence presented, including the claimant's prior work record and observations by third parties and treating and examining physicians as to:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. any precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication; and

5. any functional restrictions.

Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190. 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he

found to be credible based on his evaluations of the entire record." )

The ALJ's determination of Claimant's RFC is supported by substantial evidence in the record. Likewise, the ALJ noted several inconsistencies within Dr. Bacon's findings in the RFC Questionnaire and with his other treatment notes, and he pointed out the lack of supporting objective medical evidence. As discussed, the ALJ's RFC incorporated in part some of Dr. Bacon's restrictions in his RFC determination. The ALJ noted that Dr. Bacon's treatment notes reflect that Claimant's liver condition was stable and mild and no ascites. The ALJ opined that the medical record does not show that any physician, including Dr. Bacon, imposed any functional restrictions of Claimant. Indeed, the ALJ highlighted the lack of documentation in the treatment records of restrictions ever placed on Claimant. The ALJ also properly considered the <u>Polaski</u> factors in concluding that "claimant's allegations of disabling symptoms precluding all substantial gainful activity are not consistent with the evidence and are not credible." (Tr. 19). The ALJ listed facts from Claimant's hearing testimony regarding the <u>Polaski</u> factors that reflected upon Claimant's ability to perform a wide range of work at the sedentary exertional level such as her daily activities of attending Alcoholic Anonymous meetings three times a week, sometimes doing laundry and washing the dishes, reading a lot, preparing simple meals, going to the post office, riding in the car, and fishing on Thursdays. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. <u>See</u> <u>Samons</u>, 497 F.3d at 818 (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's decision to discontinue medications, the absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant disabled or imposing any functional limitations, her failure to seek regular and sustained

treatment, medical noncompliance, and her professed belief of being able to work. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform a wide range of work at the sedentary exertional level. The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains a RFC to perform a wide range of work at the sedentary exertional level.

The undersigned also disagrees with Claimant's contention that the ALJ should have contacted Dr. Bacon for further clarification. Such clarification is necessary only where a critical issue is undeveloped or underdeveloped. Samons, 497 F.3d at 819 (citation omitted). However, where, as in the instant case, "an ALJ concludes, based on sufficient evidence, that the treating doctor's opinion is 'inherently contradictory or unreliable,' he or she is not generally required to seek more information from that doctor." Id. Given the undersigned's finding that the ALJ properly refused to give substantial weight to Dr. Bacon's opinion, the ALJ did not have a duty to contact him. Id. Thus, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant could lift over five pounds; stand and walk more than two hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally use ramps, stairs, stoop, kneel, or crawl; never climb; and only have moderate exposure to irritants such as fumes, dust, gases, or smoke.

The substantial evidence on the record as a whole supports the ALJ's decision. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed

merely because substantial evidence may support a different outcome. <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting <u>Locher v. Sullivan</u>, 968 F.2d 725, 727 (8th Cir. 1992)).

B.     <u>Credibility Determination</u>

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide. <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 816 (8th Cir. 2003); <u>Jones v. Chater</u>, 86 F.3d 823, 826 (8th Cir. 1996); <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must also consider all of the evidence relating to the Claimant's prior work history, the absence of objective medical evidence to support the complaints, and third party observations as to:

1.     claimant's daily activities;

2.     duration, frequency and intensity of the pain;

3.     precipitating and aggravating factors;

4.     dosage, effectiveness and side effects of medication;

5.     functional restrictions.

<u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001) (stating factors from <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ may disbelieve the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1072 (8th Cir. 2004).

The undersigned recognizes that pain itself may be disabling. <u>See</u> <u>Loving v. Department of Health & Human Servs.</u>, 16 F.3d 967, 970 (8th Cir. 1994). However, "the mere fact that

working may cause pain or discomfort does not mandate a finding of disability." Jones, 86 F.3d at 826. "[T]he real issue is how severe the pain is." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)). While there is no doubt that claimant experiences pain, the more important question is how severe the pain is. Gowell, 242 F.3d at 796.

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966). The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966. The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons. See Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will

normally defer to credibility determination).

In his decision the ALJ thoroughly discussed the medical evidence of record, the lack of ongoing medical evidence corroborating Claimant's subjective complaints of functional limitations, the noncompliance in taking medications, and the testimony adduced at the hearing. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

Specifically, the ALJ noted that no treating physician stated that Claimant was disabled or unable to work during the relevant time period.[6] See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809

_____

[6] The ALJ discredited Dr. Bacon's opinion set forth in the RFC Questionnaire inasmuch his opinion was inconsistent with his own treatment notes and the record as a whole. The ALJ found that there was no substantive evidence to support Dr. Bacon's opinion and his opinion was refuted by other medical specialists. Likewise, the opinion of Dr. Fitzgerald regarding Claimants' inability to work due to hepatitis C set forth on a prescription note is discredited   The ALJ discredited as inconsistent with his own treatment notes and other medical specialists.

F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on her daily activities, or functional or physical limitations.[7] Further, the ALJ noted that despite her allegations of persistent pain, Claimant has not received ongoing medical attention or treatment for her pain. Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints."); See Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997) (determining that failing to seek treatment was inconsistent with claimant's subjective complaints of disabling pain); Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993) (lack of ongoing treatment is inconsistent with complaints of disabling condition). Likewise, the medical evidence is devoid of any evidence showing that

---

[7]In rejecting Dr. Bacon's medical opinion finding Claimant would have to miss at least four days each month, the ALJ noted how Dr. Bacon never made such a determination in his course of treatment. See, e.g., Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (a treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given to his opinions)see also Goetz v. Barnhart, No. 05-2267, slip op. at 2 (8th Cir. June 2, 2006) (unpub. per curiam) (declining to give controlling weight to the treating physician's opinion because the treating physician's notes were inconsistent with her residual functioning capacity assessment).

Claimant's condition has deteriorated or required aggressive medical treatment although Claimant testified otherwise at the hearing. See Id.; Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). At the hearing, Claimant testified that she attends AA meetings three times a week, sometimes does laundry and washes the dishes, prepares simple meals, and leaves her home for a variety of errands or activities. Further, Claimant reported that she enjoys fishing on Thursdays and reading a lot. Next, the ALJ stated the record failed to reveal Claimant's medications not to be effective, or that Claimant suffered severe side-effects. Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001); Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999). The ALJ also noted that Claimant was not compliant with treatment recommendations on a number of occasions. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

The ALJ further noted that Claimant takes over-the-counter medications for her back and abdominal pain, not narcotic pain relievers. See Masterson v. Barnhart, 363 F.3d 731, 739 (8th Cir. 2004) (ALJ properly considered that claimant did not take narcotic pain medication in finding her complaint of extreme pain not credible); Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (holding that pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). Further, the ALJ noted how by her own admission, Claimant is able to engage in household chores and activities. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence."). The ALJ opined these to be

consistent with sedentary work.  See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (affirming

ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for

one of his children on a daily basis, drive car infrequently, and go grocery shopping occasionally).

These observations are supported by substantial evidence on the record as a whole.

　　　　As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied

relief solely on the lack of objective medical evidence to support his finding that Claimant is not

disabled.  Instead, the ALJ considered all the evidence relating to Claimant's subjective

complaints, including the various factors as required by Polaski, and determined Claimant's

allegations not to be credible.  Although the ALJ did not explicitly discuss each Polaski factor in

making his credibility determination, a reading of the decision in its entirety shows the ALJ to

have acknowledged and considered the factors before discounting Claimant's subjective

complaints.  See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  Inasmuch as the ALJ

expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a

whole, and the ALJ's determination is supported by substantial evidence, such determination

should not be disturbed by this Court.  Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).

Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not

entirely credible, the undersigned defers to the ALJ's credibility findings.  See Leckenby v.

Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination

when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d

798, 801(8th Cir. 2005).

　　　　The undersigned finds that the ALJ considered Claimant's subjective complaints on the

basis of the entire record before him and set out the inconsistencies detracting from Claimant's

credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence). Those included Claimant's minimal, ongoing medical treatment, her lack of functional restrictions by any physicians, her daily activities, lack of objective medical evidence, noncompliance with recommended treatment, and lack of pain medications. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

C.                 Vocational Expert Testimony

Claimant contends that the testimony of the vocational expert did not constitute substantial evidence upon which a determination could be made that Claimant was not disabled arguing only that the expert's opinion is flawed because the expert relied on the RFC.

After the ALJ has made a finding at step four that the Claimant cannot perform her past work, he moves on to step five in which the burden shifts to the Commissioner to show that jobs exist in the economy that the claimant is able to perform.  The ALJ will consider the claimant's age, education, and past work experience in determining whether such jobs exist.  20 C.F.R.        § 404.1520.  The ALJ may seek the opinion of a vocational expert regarding jobs the claimant can perform.  Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001).  The vocational expert will be asked to respond to a hypothetical question, posed by the ALJ, which includes all of the impairments of the claimant.  The question must "precisely set out the claimant's particular physical and mental impairments."  Leoux v. Schweiker, 732 F.2d 1385, 1388 (8th Cir. 1984).

The ALJ's hypothetical question posed to a vocational expert need not include alleged impairments which the ALJ has rejected as untrue.  Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000); Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997).  As discussed above, the ALJ properly accorded little weight to Dr. Bacon's functional restrictions and findings inasmuch as the findings therein were inconsistent with and not supported by the objective medical evidence and the other evidence in the record.  In addition, the undersigned notes that the ALJ based his hypothetical question on medical evidence contained in the record as a whole.  Accordingly, Claimant's claim that the hypothetical opinion given by the vocational expert was flawed inasmuch as it relied on the RFC should be denied.  This claim is without merit inasmuch as the

hypothetical included those impairments the ALJ found credible. A proper hypothetical must include only those impairments accepted as true by the ALJ. Pearsall, 274 F.3d at 1220. The ALJ did not include the alleged impairment and subjective complaints that he properly discredited. Based on a proper hypothetical, the vocational testified that Claimant was able to perform jobs such as information clerk and gate guard which existed in significant numbers in the local and national economies. The vocational expert's testimony provided substantial evidence to support the ALJ's determination that Claimant could perform a wide range of work at the sedentary exertional level. Therefore, substantial evidence supports the ALJ's determination that Claimant was not disabled. Id.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that Claimant's complaint be dismissed with prejudice.

The parties are advised that they have eleven days in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal the questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __6th__ day of March, 2008.

_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE